Lee ROSS, Plaintiff In Error,

v.

W. H. STRICKER and Charles W. Stricker, d/b/a *Mule Skin Brown Company,* Defendants In Error.

No. 35865.

Supreme Court of Oklahoma.

Oct. 6, 1953.

Rehearing Denied Nov. 24, 1953.

As Amended Oct. 15, 1954.

Application for Leave to File Second Petition for Rehearing Denied Oct. 19, 1954.

Dickey, Terry & Richard, Tulsa, for plaintiff in error.

Marvin T. Johnson, Tulsa, for defendant in error.

BLACKBIRD, Justice.

The verdict and judgment of $5,700 plaintiff in error obtained against defendant in error, W. H. Stricker d/b/a Mule Skin Brown Company, previous to the judgment ordering a new trial which he herein appeals from, was for damages on account of defendant in error's alleged failure to carry out a contract to employ him in his Sand Springs' store, for a period of one year. The parties appear herein in the same relative positions they occupied in the trial court.

Plaintiff's theory was that the contract by which defendant agreed to employ him was partly oral and partly written, the written part being depicted by a letter, note or memorandum drawn up at his request and dictated in defendant's office (where plaintiff had gone in answer to defendant's newspaper advertisement), and handed to him at the conclusion of the only conference between the two concerning the matter. This writing, signed by defendant's son, is as follows:

"Mule Skin Brown
111–113–115–117–119 North Main
Sand Springs, Oklahoma.
                                        July 5, 1951.
To Mr. Ross:
This will conferm our agreement which we have entered into this fifty day of July 1951.

Mr. Ross is to receive a salary of $250.00 per week, plus three percent on all sales made in any of our three stores with the exception of the Ladies Ready to Wear dept. Commissions are to be tabulated every Friday to be paid to Mr. Ross on every Saturday with his weekly salary check of $250.00.

This agreement entered into and agreed upon in anticipation that it will promote and developed a successful and strong company and likewise be profitable to Mr. Ross.

Mule Skin Brown
/S/ Charles W. Stricker
Charles W. Stricker."

After plaintiff had left defendant's office and defendant or his son had made a further and independent investigation of plaintiff's suitability and fitness for the position described in the above writing, and before plaintiff ever assumed the duties of such employment, it was decided not to employ him; and thereupon he was telephoned and apprised of that fact.

It will be noted that the above writing or memorandum contains no reference to the term or duration of plaintiff's employment, and defendant's theory was and is that the above writing constituted an integrated contract and therefore it could not be added to by parol or oral testimony. At the trial, however, plaintiff was allowed to testify that in the oral negotiations leading up to the composition and signing of the above quoted letter or memorandum, it was orally agreed that he was to be employed for one year, and that:

"Mr. Stricker stated he wanted a permanent man in there to assist his son and teach his son the business. That his son was virtually new in there. He was turning everything over to his son eventually because of his health. He had had sickness and one thing and another and that young Mr. Stricker, Charles Stricker, he wanted to get him eventually prepared to take over the entire operations."

Plaintiff testified that he had been in the furniture business, as an executive, prac-

tically all of his life; that a short time previous to his moving to Tulsa he had been an executive with the Libby Corporation (furniture dealers) at Chicago for more than ten years; that his salary with said company was $350 per week and that in addition thereto he had received other amounts of gifts, as their general merchandising manager of its entire chain; that discussing the contract with defendant plaintiff informed them that he was considering going back to work with the Libby Corporation; that the Libby Corporation had offered plaintiff his old position at his former salary; that after entering into the contract with defendants he severed his commitments for other employment; that by entering into the contract with defendants and the cancellation of said contract by defendants, he had lost the opportunity of returning to his former position; that a position as a furniture executive is very hard to find because such positions are very rare. The trial judge's instructions to the jury were upon the theory that the parties' contract could have been partly oral and partly written, but upon consideration of defendant's motion for a new trial, the judge apparently decided he had been wrong, and thereupon sustained said motion. The court's views at that time are reflected in his remarks, definitely restricting his ruling as follows:

"Gentlemen in this case of Ross v. Stricker, in passing upon the defendant's motion for new trial, I have considered the various grounds advanced in the defendant's motion for new trial. I am of the opinion that all the grounds except one, advanced by the defendant in his motion for new trial are without merit. However, I am of the opinion that one of the points involved and advanced by the defendant in his motion for new trial is decisive in this matter and that point is this. Where there is a written contract of employment, which is not ambiguous, which contains no term of duration, may parole evidence be introduced over proper objection to show the term of duration was for one year? I am of the opinion that the Supreme Court of this State has answered that question in the case of Foster v. Atlas Life Insurance Company reported in 154 Oklahoma, page 30, 6 P.2d page 805, wherein the Court held that a contract for employment which was very similar to the contract at bar, and no time of duration of employment was specified and the plaintiff sought to establish the duration of time of employment by parole evidence, the Court held in Foster v. Atlas Life Insurance Company that parole evidence was not admissible. I regard this case as absolutely binding and conclusive on the parole evidence issue, and am thus required by the case cited to sustain the motion for new trial. May it be clearly understood that the Court is of the opinion that all the other grounds advanced by the defendant for a new trial are without merit, and that the Court is of the opinion that they are without merit.

\*    \*    \*    \*    \*    \*

"The sole reason that this court is sustaining the motion for new trial of the defendants is the opinion of the court, that the Foster v. Atlas Life Insurance Company case cited above, is absolutely binding and controlling on this court."

In view of the above and the arguments in the briefs, it is plain that the foremost question involved in this appeal is the correctness of the trial judge's view that under this court's opinion in Foster v. Atlas Life Insurance Co., 154 Okl. 30, 6 P.2d 805, 806, the trial court committed reversible error in admitting plaintiff's testimony above referred to, which had the effect of engrafting upon the parties' contract, as revealed by the above writing, the additional provision for one year's employment thereunder. Defendant takes the position that the writing discloses the entire contract between the parties, and urges that since said contract contains no provision as to its term or duration, the admission of the plaintiff's testimony was in violation of the "parol evidence rule." The rules announced in the syllabus of the cited case are undoubtedly well established

abstract propositions of law. Whether they were properly applied to the fact situation in that case in view of some of the more modern trends of thought (see authorities, infra) is unnecessary here to determine, because, as we view the matter, that case may be readily distinguished from the present one. There the writing was referred to and deemed a contract, while here the writing is merely a written memorandum or evidence of a previous oral contract. In plaintiff's brief, our attention is directed to the fact that the instrument in the Foster case began with the words: "It is hereby agreed * * *", while here the writing specifically refers to a previous agreement and does not purport, in itself, to be a complete and formal contract. The opinion in the Foster case contains the following quotation from 22 C.J. p. 1075:

"The legal effect of a written instrument, even though not apparent from the terms of the instrument itself, but left to be implied by law, can no more be contradicted, explained or controlled by parol or extrinsic evidence than if such effect had been expressed. * * *"

Further in the same paragraph of the quoted text, it is said:

"It would seem, however, that practical difficulty must arise in the application of this rule by reason of another rule, equally well established, that where a writing does not express the entire agreement of the parties, extrinsic evidence is admissible with respect to the matters not provided for in the writing * * *."

The rule concerning a "continuing executory contract" quoted in the Foster opinion from page 1076 of the same text has been omitted from the same title in the newer work, Corpus Juris Secundum; and in 32 C.J.S., Evidence, § 999, on pages 978 and 979, we find the following:

"Whether, on the one hand, a written instrument is so complete as to exclude parol evidence of a prior or contemporaneous oral agreement or, on the other hand, the oral agreement is

collateral and parol evidence thereof is admissible, depends on whether the parties to the written contract intended the instrument to include all promises and to cover all subjects on which they negotiated. The completeness of the instrument for this purpose may appear on its face, as where the instrument expressly states that it contains the entire agreement or agreements between the parties, or that it supersedes all prior agreements, or employs other language manifesting an intent of the parties not to be bound by any agreement not expressed therein. So also the incompleteness of the instrument may appear on its face, *as where it expressly refers to, or recognizes the existence of, other agreements between the parties, it being permissible, in case of a direct reference to a verbal agreement, to prove such agreement, even though the effect of the proof is to add material terms and conditions to the contract evidenced by the writing."* (Emphasis added.)

See also Laskey v. Rubel Corp., 303 N.Y. 69, 100 N.E.2d 140; 12 Am.Jur., Contracts, Secs. 228, 241; 3 Williston on Contracts (Rev.Ed., 1936) Secs. 633, 636, pages 1820 to 1822, 1830 to 1832; Restatement of the Law, Contracts, Secs. 228, 239, 240, 242, and consider the discussion and authorities cited in the article at 53 Yale L.J. 603. In First National Bank in Tonkawa v. Beatty, 172 Okl. 47, 45 P.2d 158, this court referred to a well established previously adhered to rule cited in the earlier case of Holmes v. Evans, 29 Okl. 373, 118 P. 144, 146, as follows:

"When the writing does not purport to disclose the complete contract, or if, when read in the light of attendant facts and circumstances, it is apparent that it contains only a part of the agreement entered into by the parties, parol evidence is admissible to show what the rest of the agreement was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written instrument, for, where a

contract rests partly in parol, that part which is in writing is not to be contradicted."

See other cases cited in 6 Oklahoma Digest under Evidence, ██ and annotations following 15 Okl.St.Ann. § 137, Notes 6, 7, 18, 19 and 22.

The rule is applicable to employment contracts and at 32 C.J.S., Evidence, § 1003, page 992, is stated as follows:

"The existence of a written contract of employment does not preclude the admission of parol evidence of prior or contemporaneous collateral agreements between the employer and employee, which are not inconsistent with, or contradictory of, and do not vary or change the writing, and which relate to a matter as to which the writing is *silent*, where the writing is *incomplete or expressly refers to extrinsic agreements without stating them.*" (Emphasis added.)

This same principle was applied in Leifer v. Scheinman, Sup., 162 N.Y.S. 1086, later appeal, 179 App.Div. 665, 167 N.Y.S. 105, where it was held:

"A plaintiff suing for the breach of a written contract of hiring which is silent as to the duration of the employment may give oral evidence as to the period of the hiring for it does not contradict or vary the terms of the written contract but merely shows a portion of the agreement not reduced to writing."

For other cases on this and related subjects see the Annotations appearing at 68 A.L.R. 1251; 70 A.L.R. 753; 32 C.J.S., Evidence, §§ 997–1002, inc. Thus it will be seen that whether the writing in this case be regarded as an incomplete written contract or an incomplete memorandum of a previous oral contract, plaintiff's evidence to the effect that the term of the employment agreed upon (as to which the writing is silent) was admissible and the cause was correctly submitted to the jury on the theory that there was more to the parties' agreement than appeared in the written letter or memorandum hereinbefore quoted. It follows therefore that the trial court's action in sustaining defendant's motion for a new trial on the mistaken belief that this was prohibited under controlling principles of law and Foster v. Atlas Life Insurance Company, supra, was error. The judgment is therefore reversed.

JOHNSON, V. C. J., and WELCH, CORN, and DAVISON, JJ., concur.

HALLEY, C. J., and WILLIAMS, J., dissent.

WILLIAMS, Justice (dissenting).

I am unable to agree with the majority opinion herein, for reasons set out below.

It should perhaps first be noted that both parties herein agree that there was a contract of employment, either oral or written, and that the writing quoted in the majority opinion was either a part of, or all of, such contract.

I believe the rule stated in Foster v. Atlas Life Ins. Co., 154 Okl. 30, 6 P.2d 805, noted in the majority opinion, is controlling here. It is suggested that the Foster case can be distinguished upon the facts involved, but I think the rule of law expressed is exactly in point. It is as follows:

"A contract of employment which does not by its terms fix any period or duration between the parties, and its duration is indefinite, may be terminated by either party at any time. Arkansas Valley Town & Land Co. v. Atchison, T. & S. F. Ry. Co., 49 Okl. 282, 151 P. 1028, 1032; Rogers v. White Sewing Machine Co., 59 Okl. 40, 157 P. 1044."

In the body of the opinion the court said:

"In the case at bar, plaintiff makes no contention that the written contract was induced by fraud, accident, or mistake. Because the contract does not state the duration of the employment, it is not, by reason thereof, rendered uncertain or ambiguous so as to admit parol evidence, but such a contract is a contract at will."

That this rule is in accord with the weight of authority is shown by the fol-

lowing from 32 C.J.S., Evidence, § 854, which reads in part:

"The duration and termination of a written contract not specifying any time for its duration being governed by law, ordinarily parol evidence is not admissible to show an agreement or intent that such contract shall continue in force for, and only for, a particular period of time."

In 12 Am.Jur., Contracts, sec. 305, the following is found:

"Some contracts which mention no period of duration are construed as terminable at will. This is true of a contract for services which does not specify as to the duration. A more guarded statement of such a rule is that in contracts for personal service and special confidence there is an implication that the parties intend that it shall not be prolonged if either of the parties shall become dissatisfied."

In Jimmerson v. Troy Seed Co., 236 Minn. 395, 53 N.W.2d 273, 277, the Minnesota court said with regard to a contract of employment which did not mention any specific duration thereof:

"It is immaterial that the parties chose not to specify with exactness how long the employment term should continue beyond June 1, 1947. * * * No finding of a breach of contract can be based on the fact that plaintiff's service terminated in March 1948."

In McManigal v. Hiatt, 240 Iowa 541, 36 N.W.2d 651, 653, the Iowa court said:

"While evidence of circumstances, conditions and usage, surrounding the making of a contract of hire may be considered to interpret words of duration, it is certain such evidence will not be considered to supply a duration provision in a contract for hire. * *

"That contract in its terms speaks of an ordinary employment, without any fixed duration, and consequently terminable at the will of either party. The decree so declaring was right."

Although not dealing with contracts of employment, the following quotations are helpful by way of analogy:

"Where the contract specifies no time for delivery of the goods ordered, the law implies a delivery thereof within a reasonable time; and will not permit this implication to be rebutted by parol testimony going to fix a definite time because this varies. the contract." Cameron Coal & Mercantile Co. v. Universal Metal Co., 26 Okl. 615, 110 P. 720, 31 L.R.A.,N.S., 618.

"A contract between a manufacturer and a merchant which merely recited that the merchant assures the manufacturer a substantial volume of business and designates the merchant as the exclusive agent of the manufacturer in a certain city to sell its products, and by its terms fixes no period or term of duration, and its duration is indefinite, may be, as between the parties, terminated by either party at any time, and no action arises from the breach thereof." Dunn v. Birmingham Stove & Range Co., 170 Okl. 452, 44 P.2d 88.

Pursuant to the rule set out in the above quotations, I believe that parol evidence as to the term or duration of the employment was inadmissible in this case, since, under such rule, the contract was by implication of law terminable at will, and therefore was not indefinite, ambiguous or incomplete in that respect.

This is true regardless of whether the writing here concerned was an incomplete or ambiguous written contract, or whether it was merely a written memorandum of an oral contract. In the latter case, parol evidence was still inadmissible under the well-established rule stated in Stone v. Spencer, 79 Okl. 85, 191 P. 197. This rule is the basis of paragraph 1 of the syllabus of the majority opinion, and is to the general effect that where the writing does not purport to contain the entire contract, or where, when read in the light of attendant facts and circumstances, it is apparent that it contains only a part of the agreement, parol evidence is admissible to explain or supply the other terms, *provided* that the parol evidence is not repugnant to or inconsistent with the intention of the parties *as set out in the writ-*

*ing.* Here, as shown above, the writing, whether it was a contract or merely a memorandum, established the fact that the agreement was terminable at will, and parol evidence to the contrary was therefore inadmissible.

I am aware of the line of authority represented by Leifer v. Scheiman, 179 App.Div. 665, 167 N.Y.S. 105, noted in the majority opinion. It is sufficient to say that the contrary rule obtains in this jurisdiction as reflected in the Foster case. Furthermore, as I believe, the rule as expressed in the Foster case is supported by the better reasoning and greater weight of authority, since it is a matter of common knowledge that the vast majority of employment contracts are for an indefinite period or terminable at will.

The use of the phrase "This will con*ferm* our agreement" does not, by its terms, imply the existence of separate agreements not contained in the writing. To the contrary, I believe it is more reasonable to interpret such phrase to mean that prior agreements, if any, *are* contained in the writing, since that could logically be said to be the very purpose of the writing. This is especially true in view of the particular content of the writing here under consideration (the last sentence of the writing includes the phrase "This agreement"). Plaintiff's argument in this respect would carry more weight if the quoted phrase read "This will confirm *part* of our agreement".

In National Mineral Co. v. A. L. Sterne Co., 198 Okl. 37, 174 P.2d 922, 923, we said:

> "Where only part of an agreement is reduced to writing, it is competent to prove by parol any separate agreement on which the document is silent and which is not inconsistent with its terms. The criterion of the completeness of the writing is the writing itself, construed in the light of the circumstances under which, and the purpose for which, the writing was executed. It is not competent to lay the foundation for such oral evidence by oral testimony that only part of the agree-

ment was reduced to writing, and then to prove by parol the part omitted."

In General Paint Corporation v. Kramer, 10 Cir., 57 F.2d 698, 701, the court said:

> "Partnership contracts are usually terminable at will; usually the partnership is created by the writing. It is academic that articles of partnership, although terminable at will, are nevertheless contracts which govern the rights and obligations of the partners for the period of the partnership."

I therefore respectfully dissent.